Bromwell, J.
This case comes before the court on a demurrer to the petition, and the allegations to the petition are briefly as follows:
1. That plaintiff since early infancy was reared and cared for by testatrix and her husband, who had no children of their own; the plaintiff grew to womanhood in their care and performed toward them all the duties, services and office of a loving daughter, and that after plaintiff’s marriage the same filial, affectionate and intimate relations were maintained between said parties.
2. That testatrix had no immediate relations living at the time she made her will nor when she died.
3. That by said will it was the intention of testatrix to leave to plaintiff a bequest which should suffer no abatement by reason of any deficiency in the amount necessary to pay all the legacies.
4. The petition then sets out the death of testatrix and the probate of her will, a copy of which, as “Exhibit A,” is made part of the petition; names the legatees and heirs at law and alleges the payment in full of the two bequests- to the Trustees of the Diocese of Southwestern Ohio of the Protestant Episcopal Church and the Domestic and Foreign Missionary Societies of the Protestant Episcopal Church, respectively.
5. That the property of testatrix which has been sold was-insufficient to pay all the legacies.
*383 6. That plaintiff is entitled to.the full amount of her legacy but that said administrator de bonis non contends that said legacy together with that of Mary Ann Sullivan should be reduced and abated to the extent that the balance in his hands may be divided proportionately between said Mary Ann Sullivan, the plaintiff and the other unpaid legatees.
7. That said administrator has refused plaintiff’s request that he bring suit to construe said will and thereupon plaintiff brings this action for that purpose.
It then prays for a construction of said will and an order to said administrator not to pay said balance of funds in his hands to any other than said Mary Ann Sullivan and the plaintiff.
The sections of the will in controversy are as follows:
“Item II. I give and bequeath to the trustees of the Diocese of Southern Ohio of the Protestant Episcopal Church the sum of one thousand ($1,000) dollars, in trust, .however, as follows : * * *
“Item III. I give and bequeath to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church the sum of $1,000 as follows, to-wit.:
“Five hundred ($500) dollars to the foreign work and missions of said society.
“Five hundred ($500) dollars to the domestic work and missions of said society.
“Item IY. I give and bequeath to my nephew, Walter Emilus Phelps, now of Dunkirk, N. Y., the sum of one hundred ($100) dollars, also the portraits of my father and mother and the old family Bible.
‘ ‘ Item Y. I give and bequeath to my nephew, William Phelps, nów of Buffalo, N. Y., the sum of one hundred ($100) dollars.
“Item YT. I give andhequeath to my nephew, Manley S. Butler, now of Smith Center, Smith Station, Illinois, the sum-of one hundred ($100) dollars.
“Item YII. I give and bequeath to my nephew, William Alexander Phelps, now of Hobart, Oklahoma, the sum of one hundred ($100) dollars.
“Item YIII. I give and bequeath to Ida Odiorne, Emma Odiorne and Lena Odiorne, now of Elizabeth, New Jersey, daughters of David W. Odiorne, late nephew of my deceased husband, the sum of fifty ($50) dollars each. Should any of the daughters of the said David W. Odiorne, deceased, die before I do, the sum herein bequeathed to such daughter to be applied toward *384 increasing the amount herein bequeathed to the remaining daughters, share and share alike.
"Item IX. I give and bequeath to my faithful maid, Mary Ann Sullivan, the sum of one hundred and fifty ($150) dollars, as a slight recognition of her long and faithful services.
"Item XII. I give and bequeath to said Sarah Ii. Youtsey, of Newport,- Kentucky, the sum of two thousand ($2,000) dollars.
‘ ‘ Item XIV. If, after the payment of the foregoing bequests and of all proper charges against my estate, there be anything remaining, it is my will that said balance or residue be applied ratably to increase the bequests named in Items II and III of this will. Or if after the conversion of my estate as provided for in Item XIII, preparatory to the payment of the several bequests hereinbefore made, it appears that there are not sufficient funds to pay all of the said bequests and all proper charges against my estate in full, then it is my will that the bequests named in Items IV, V, VI, VII and VIII shall be reduced ratably or if necessary canceled entirely, it being my wish that Items II and III shall at all events be paid in full.”
Article XIII provides for a conversion of the estate into a fund for the payment of the above legacies. The bequests mentioned in Items IT and III have been paid in full. The remaining bequests aggregate $2,700, while the balance of the fund in the hands of the administrator de bonis non is only $1,955.91, and the question is whether that sum shall be pro rated among all the other bequests or whether Mary Ann Sullivan, the legatee under Item IX and plaintiff under Item XII shall be entitled to the whole of said balance to be pro rated between themselves to the entire exclusion of the other remaining beneficiaries. It is conceded that this depends largely upon the interpretation placed upon Item XIV.
"If * * * it appears that there are not sufficient funds to pay all of said bequests and all proper charges against my estate in full, then it is my will that the bequests named in Items' IV, V, VI, VII and VÍII shall be reduced ratably or if necessary canceled entirely, it being my wish that Items II and III shall at all events be paid in full.”
The -administrator, who files the demurrer,, contends that the reduction provided for in this item applies only to *385 the two church bequests named in Items II and III. The plaintiff claims that said reduction or cancellation applies also to the bequests to Mary Ann Sullivan (Item IX) and to plaintiff (Item XII). If the contention of the administrator is correct then- the balance of -the assets must be divided pro rata among all the beneficiaries who are still unpaid. If plaintiff’s claim is correct-then said balance should be pro rated between Mary Ann Sulivan and the plaintiff to the entire exclusion of the other unpaid beneficiaries.
The administrator seeks to show that the purpose of said reduction was merety for the purpose of carrying out the wish expressed in the last clause of Item XIV, viz., that the church bequests “should at all events be paid in full” and was not intended to protect the bequests to Mary Ann Sullivan and plaintiff. If this view correctly represents the intention of the testatrix not to make these last named beneficiaries preferred legatees against the nephews and nieces, why were Items IX and XII not included with the others named for reduction? Or why any necessity for mentioning the bequests that were to be reduced when the object, viz., a ratable reduction in case of a deficiency, was ordered to be made to pay the church bequests in full? If this construction were correct and no bequests had been named at all as subject to reduction, the law would step in and pro 'rate the balance of the assets among all of the other unpaid beneficiaries, including Mary Ann Sullivan and plaintiff, to make up the deficiency in the church bequest.
Suppose a semi-colon instead of á comma had preceded the last clause in Item XIV, would there have been any possible doubt as to the intention of the testatrix? Mere punctuation, if it renders doubtful or ambiguous the intention of the testatrix, may be disregarded if from other circumstances- a reasonable construction of the testatrix’s intention may be arrived at. There is no language in the will which specifically shows any intention to abate or reduce the two legacies to Mary Ann Sullivan and plaintiff. The bequests to them are positive and direct, with no limitation whatever, and, as we have said before, any intention to have their legacies abate could easily and in simple words have been used to disclose that intention.
*386 Again, it is well established that, in the construction of ambiguous terms or language in a will, we may take’into account, for the purpose of arriving at the intention of the testatrix, the circumstances and conditions surrounding her and her relation to the parties named in the will at the time it was made, and for the purpose of showing those circumstances, conditions and relations, oral or other testimony outside the language of the will itself, is competent evidence. Let us see what they were in the present case, it being remembered that the demurrer admits as true the allegations of facts contained in the, petition.
Mary Ann Sullivan is described in the will as the “faithful maid” of the testatrix and, although she has filed no pleading in this case it is admitted that she stands in the same p'osition as plaintiff so far as the question of the abatement of her legacy is concerned. Now as to the plaintiff’s relation to testatrix. The petition alleges, practically, that she was the foster-daughter of, although it is not alleged that she was formally adopted by, testatrix; that she lived with testatrix on terms of intimate affection from the time she was a small child until her marriage; and that these relations continued to exist after her marriage and down to the time of the death of testatrix. She rendered testatrix the duty and service of a ‘daughter and, to all intents and purposes, was in the position and relation in these respects, of an actual daughter.
On the other hand, the beneficiaries named in Items IV to VIII, both inclusive, were nephews and nieces, all living at a distance from testatrix, and with nothing in the petition to show any relation of love or affection, nor did such appear in the will itself. One lived at Dunkirk, New York; one at Buffalo, New York; one at Smith Station, Illinois; one at Hobart, Oklahoma, and the other three at Elizabeth, New Jersey. There is no allegation in th’e petition that testatrix had ever seen any of them or knew them except as relatives. She gave each of them a small bequest, one hundred dollars or less, while she gave her “faithful maid,” Mary Ann Sullivan, one hundred and fifty dollars (more than she gave to any nephew or niece), and to her foster-daughter, the plaintiff, two thousand dollars. These *387 are circumstances to be considered in arriving at her intention.
In the case of Painter v. Painter et al, 18 Ohio, 265, the court said:
‘ ‘ But though the intention of a testator is to be ascertained by the expressions he used, it is not denied that parol testimony is admissible in questions arising in reference to the disposition of the estate. * *' * The situation of the testator in regard to his property, his declarations, the situation and circumstances of the property' and the relation of the persons named in the will may all, it is conceded, be the subjects of proof upon the trial, but not for the purpose of altering or in any way changing the will itself.”
In the case of Lessee of Worman v. Teegarden, 2 O. S., 380, the court said:
“In construing a will grammatical accuracy need not be observed and it should be read with a view to the situation and circumstances of the testator in reference to the subjects of his disposition and the objects of his bounty. ’ ’
In the case of Thompson, Admr., v. Thompson el al, 4 O. S., 333, the court said:
“A will is to be construed in the light afforded by the circumstances under which it was made and the subjects to which it relates.”
In the ease of Charch v. Charch, Executor, 57 O. S., 561, the court said:
“The intent of the testator, the guide in the construction of a will, is to be gathered from a consideration of the entire instrument, and where any part of the will is ambiguous, oral proof may be heard of the circumstances of the testator- at the-time of making the will, of his estate and of the objects of his bounty. ’ ’
The conclusion we reach is that the intention of the testatrix was to establish three classes of beneficiaries.
1. The church societies, which were .to be paid in full, no matter how'their payment affected the other legacies.
2. Mary Ann Sullivan and the plaintiff, who were to be paid in full, if sufficient asséts remained after paying the church be *388 quests; if not, then they were to pro rate between themselves in proportion to .the amount of their bequests whatever balance remained to the entire exclusion of the nephews and nieces.
Constant Southworth, for plaintiff.
Frank K. Bowman, Harry W. Vordenberg and Mr. Boulger, of Chillicothe, for various defendants.
3. The nephews and nieces, who were to be paid in full, if sufficient assets remained after the first two classes above had been paid in full; if after paying said two first classes in full some assets remained but not enough to pay said nephews and nieces in full, their legacies were to be pro rated according to their various amounts; and, finally, if no assets remained after payment of the first two classes, either in full or partially, the bequests to said nephews and nieces were to be extinguished entirely.
Construing the will in this way the court overrules the demurrer.